ROBERT T. AND MARYLIN McCANN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McCann v. Commissioner
Docket No. 10335-78.
United States Tax Court
T.C. Memo 1981-287; 1981 Tax Ct. Memo LEXIS 459; 42 T.C.M. (CCH) 67; T.C.M. (RIA) 81287; June 11, 1981
*459 Held: 1. Carryover losses disallowed. 2. Addition to tax for negligence under sec. 6653(a), I.R.C. 1954, not imposed. Robert T. and Marylin McCann, pro se. J. Michael Melvin, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioners' income taxes for the years 1975 and 1976 in the amounts of $ 870.63 and $ 161, respectively, and additions to tax for negligence under section 6653(a), I.R.C. 1954, in the amounts of $ 43.53 and $ 8.05, respectively. Due to concessions by the parties, the only issues remaining for decision are (1) whether petitioners are entitled to deduct "loss carryovers" in the amount of $ 4,974.64 for the year 1975 and in the amount of $ 3,539.36 for the year 1976, or in any other amounts, *460 and (2) whether petitioners are liable for the negligence addition to tax mentioned above for those years. FINDINGS OF FACT Petitioners Robert T. McCann (hereinafter McCann) and Marylin McCann are husband and wife who filed joint Federal income tax returns for the years 1975 and 1976 with the Office of the Director, Internal Revenue Service Center, Chamblee, Ga.
In 1966, Thomas Heagney (hereinafter Heagney) acquired at a public sale for $ 151,000 a tract of land from the Township of North Bergen, Hudson County, N.J.
In 1967, McCann and Heagney entered into an oral agreement to develop the tract of land referred to above and to share the profit from the sale thereof. In connection with the development of the land, it was necessary that landfill be acquired. Some of the landfill was obtained from persons or companies who paid a fee to permit the dumping of debris which was then used as landfill; other material used as landfill was purchased by McCann. McCann performed the actual labor of bulldozing the landfill as required to develop the land. Petitioner was paid no wages or other compensation during the period he worked to develop the land between 1967 and 1970. Petitioner *461 received the amounts paid by dumpers to dump their debris and used parts of it to pay for landfill and other expenses incurred and turned the remainder over to Heagney. Portions of the developed property were sold in 1968, 1969, and 1970, but McCann received no portion of the proceeds from such sales. When it became apparent that Heagney would not honor his agreement to share the profits from the sale of the developed land, McCann brought suit against Heagney in 1970 for an accounting. McCann settled the suit in 1971 for $ 27,000, $ 15,000 of which was paid to McCann and his attorney at the time of settlement and the balance was paid to McCann and his attorney in installments subsequent thereto.During the course of the settlement discussions McCann acknowledged that he had previously received $ 5,000 from Heagney. Petitioners furnished an unsigned copy of a Form 1040 (income tax return) purportedly covering the tax years 1967 through 1971, which was stipulated into evidence. This form and schedules attached reflected income received from the fair market value of landfill--$ 600,000; from land improvement-bulldozing--$ 80,000; from approximate cash received and turned over to *462 Heagney--$ 200,000; from cash sales--$ 12,000 $ ;:$ and from miscellaneous sources--$ 15,000; totaling $ 907,000. It also reflected business and personal expenses totaling $ 60,722, and a bad debt expense--Heagney, of $ 850,750. Against these total expenses of $ 911,472 there was subtracted the $ 907,000 of income mentioned above, leaving a net loss figure of $ 4,472. From this was subtracted income earned of $ 2,235, leaving a net loss figure of $ 2,237, to which was added $ 4,050 for six dependency exemptions, leaving a bottom line net loss figure of $ 6,287, which appears to be the starting point for petitioners' claimed "loss carryovers" for the years 1975 and 1976 here involved. Petitioners filed no other returns for the individual tax years 1967-1971. Petitioners' joint return for 1975 reported income from wages, etc., in the amount of $ 10,130, dog-track winnings of $ 1,090, and a loss carryover of $ 6,064.64, [1] resulting in reported adjusted gross income of $ 5,155.36. The return also claimed itemized deductions for medical expenses, taxes, interest, cash contributions, casualty losses, and miscellaneous, which included $ 1,090 for dog-track losses, totaling $ 6,444.73. *463 Deducting the last figure from adjusted gross income resulted in a negative figure of $ 1,289.36 to which was added $ 3,750 for five exemptions, which resulted in a reported taxable income of minus $ 5,039.36. Petitioners' joint return for 1976 reported income from wages, etc. of $ 6,186.90, from which was deducted a "Carry Over Loss--1975" in the amount of $ 3,539.36, resulting in adjusted gross income of $ 2,647.54. Itemized deductions for medical, taxes, interest, cash contributions, and miscellaneous totaling $ 2,751.52 were claimed on *464 the return, which, when subtracted from reported adjusted gross income, resulted in in a minus figure of $ 103.98. Adding $ 2,250 for three exemptions to the latter figure resulted in reported taxable income of ($ 2,353.98). There is no explanation of why a figure of $ 3,539.36 was claimed on the 1976 return as a loss carryover, rather than the bottom line figure shown on the 1975 return in the amount of $ 5,039.64. [2]
In the notice of deficiency respondent disallowed, for 1975, the claimed medical expense, casualty loss, and the carryover loss for lack of substantiation, and disallowed two of the dependency exemptions, since the named individuals filed joint returns. For 1976, respondent disallowed the carryover loss deduction and all claimed itemized deductions for lack of substantiation, and allowed the standard deduction. In the Stipulation of Facts, respondent concedes the gambling loss claimed by petitioners for 1975 and the charitable contribution deduction claimed by petitioner for 1976. At *465 the trial petitioners conceded all of the other adjustments made by respondent except the carryover losses and the negligence addition to tax. OPINION In light of the concessions by the parties the only issues we have for decision are the carryover losses and the additions to tax for negligence. It is unclear just what is the basis for petitioners' carryover loss claims. At times they refer to them as capital loss carryovers and at other times they refer to them as operating loss carryovers. On reply brief petitioners assert that their contention is that McCann made capital contributions to a joint venture land development project with Heagney and that since Heagney failed to honor his agreement to share the profits from the sale of the developed land and has not paid McCann for his contributions to the project, petitioners suffered a theft loss of assets used in a trade or business. Initially, we will have to decide this issue for respondent if for no other reason than that petitioners have failed to prove how much of their $ 6,287 carryover loss for 1971 was absorbed by capital or business gains, or was allowable as a capital loss, in the preceding or intervening years. *466 If the loss was an operating loss, under section 172 it must first be carried back for 3 years, and then carried forward 7 years. If it was a capital loss it could be carried forward until completely absorbed but would be reduced by capital gains received in each year and the amount thereof deducted as a capital loss in any of the intervening years. Since we have no individual returns for the years 1968, 1969, 1970, 1972, 1973, and 1974, we have no way of knowing whether any portion of this rather small original loss ($ 6,287) survived the absorption process required by law so as to be available as a loss carryover in 1975 and 1976. We also note that the petitioners include in the loss carryover computations in their 1975 and 1976 returns additions for personal exemptions which are not includable in either capital or operating loss carryovers. We have no means of knowing how these and other adjustments might have affected the loss carryback prior to 1971 and the loss carryovers through the years 1972, 1973, and 1974. But to be fair with petitioners we have tried to determine from the evidence presented whether they actually incurred a deductible loss of any kind in 1971. We *467 must conclude that the evidence fails to prove such a loss. McCann did not acquire a capital asset in his dealings with Heagney. At best he had an oral understanding with Heagney that McCann would do the work at the dump site and Heagney would share the profits with him. McCann did not buy on his own account the landfill that was dumped on the marsh. He used either Heagney's or joint venture money to pay for the fill. Heagney continued to own the land and the fill became a part of it. The only thing contributed by McCann was his labor and this would give him no basis in a capital asset which would support a capital loss even if he had acquired one. We cannot accept the $ 907,000 figure used by petitioners in the copy of a combination return for the years 1967-1971 as proof of McCann's basis in the landfill. If it was his money that was used to buy the landfill, he must have had an enormous amount of unreported income during this period to acquire these funds. And the offsetting deduction against this reported income was a bad debt loss of $ 850,750 from Heagney which has no support in the record. It seems clear that McCann was not in business for himself and we do not understand *468 him to claim that he was. So petitioners would have no operating loss from a business operated in McCann's individual capacity. This leaves only McCann's purported share of any losses suffered by the partnership or joint venture between Heagney and McCann as a basis for petitioners' claimed loss in 1971. Unfortunately there is no evidence from which we can determine whether the so called partnership or joint venture suffered losses. No partnership information returns were offered in evidence nor have we any evidence of what income Heagney received from the dumping activity and the sales of parts of the development project. So we cannot attribute any partnership or joint venture loss to McCann. Looking at the project as a whole we can understand that McCann feels he did not receive his fair share of the proceeds from the project. But these were only anticipated receipts, the failure to collect which does not give rise to a loss deduction. See Hutcheson v. Commissioner, 17 T.C. 14 (1951). McCann was not out of pocket any money. He lost only his labor and since the value of that labor was never included in his income for tax purposes, it does not provide a *469 basis for a deductible loss. If this was a joint venture, McCann used Heagney for an accounting for his share of the profits. As a result he received a total of $ 32,000 from Heagney in a settlement. Although McCann may have thought he was entitled to more, this was a voluntary settlement and we cannot conclude that he suffered any loss on the transaction. We hold for respondent on this issue. Petitioners have the burden of proof on the addition to tax for negligence. Estate of Mason v. Commissioner,, 64 T.C. 651 (1975), affd. by order 566 F.2d 2 (6th Cir. 1977). However, neither the notice of deficiency nor respondent's answer specifies what the negligence was. Most of the deductions disallowed by respondent were for lack of substantiation. But since the parties settled all of the deduction issues except the carryover losses there was no apparent need for petitioners to attempt to substantiate the deductions at trial. It is true that petitioners failed to substantiate the carryover loss deductions but we believe this was due more to a misunderstanding of the law rather than a failure to keep records that they should have had for 1975 and 1976. *470 We think the circumstances negate the presumption of negligence arising out of respondent's determination.We conclude that the addition to tax for negligence should not be imposed. Decision will be entered under Rule 155. Footnotes
1. Attached to the return is a page entitled "Amendments To Taxable Income For Years" 1972, 1973, and 1974. The table for 1972 starts with a carryover loss from 1971 of $ 6,287 to which is added a 1972 loss of $ 232.60, presumably reflecting taxable income for 1972 of ($ 6,519.60). An additional loss of $ 3.96 was added for 1973 and a loss of $ 41.08 for 1974, resulting in what is shown as taxable income for 1974 of ($ 6,564.64). No returns for the years 1972, 1973, and 1974 were offered in evidence. There is no explanation why the "Loss Carryover" claimed on the 1975 return was $ 6,064.64 rather than the $ 6,564.64 mentioned above.↩
2. The similarity of the figures suggests there might have been an error in transposition although the $ 1,500 difference might reflect some other unexplained adjustment.↩